Richard Francis HYLAND, II,
Plaintiff-Appellee,

v.

Loretta FUKUDA, in her capacity as Chief, Recruitment and Examination Division, Department of Personnel Services, State of Hawaii, Defendant-Appellant.

No. 76–2862.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1978.

Michael A. Lilly (argued), Honolulu, Hawaii, for defendant-appellant.

Michael F. O'Connor (argued), Honolulu, Hawaii, for plaintiff-appellee.

Before CHAMBERS, WALLACE and ANDERSON, Circuit Judges.

WALLACE, Circuit Judge:

An officer of the State of Hawaii appeals from a judgment of the district court which declares that certain provisions of the federal gun laws do not impose criminal penalties on a convicted felon who receives a firearm in the course of his or her employment by the state. We reverse.

I

In October 1973, Hyland applied to the state Department of Personnel Services (the Department) for the civil service position of Adult Corrections Officer II (ACO–2). On the application, Hyland stated that he had previously been convicted of armed robbery and as a result had served a three-year prison term.

Hyland's application was accepted and he was allowed to take the state's civil service examination. The Department was concerned, however, about the legality of employing Hyland in a position which would require him to carry a firearm.[1] As a result, the Department sent Hyland the following notification:

> While you qualified on the examination, we are suspending your eligibility for employment consideration until we receive from the Department of the Attorney General, a response to our request for a clarification of the State and Federal laws concerning possession and use of firearms by persons who are convicted for a felony. As soon as we receive the response, we will notify you as to whether you can be considered for employment.

On April 12, 1974, the Attorney General advised the Department that a prison guard who receives a firearm that has previously traveled in commerce, and who is a person having a prior felony conviction involving the use of a firearm must have received a governor's pardon with respect to that conviction before he can be considered for employment as a prison guard.

The Department thereafter advised Hyland that it was suspending his eligibility for employment until it received evidence that he had been pardoned by the governor of California.

Hyland commenced this action pursuant to 42 U.S.C. § 1983, claiming that the Department's refusal to consider his application violated his rights to due process and equal protection of the laws. Hyland's complaint sought damages and declaratory and injunctive relief.

The Department moved for summary judgment on the ground that provisions of the federal gun laws, 18 U.S.C. § 922(h) and 18 U.S.C. App. § 1202(a), barred Hyland from employment which would require him to carry a firearm. The district judge disagreed and denied the Department's motion. 402 F.Supp. 84 (D. Hawaii 1975). Following additional discovery and a brief trial, the court entered judgment in favor of Hyland, declaring "that 18 U.S.C. § 922(h) and 18 U.S.C. Appendix § 1202(a) do not [prescribe] criminal penalties for a former felon who receives a firearm in the course of his duties and employment with the State of Hawaii." The court also enjoined the Department from refusing to certify Hyland as eligible for ACO–2.

On appeal, the Department argues that the district judge erred in ruling that the federal gun laws do not prevent Hyland's employment as an ACO–2.[2] Our study of

---

1. The Department's job description for ACO–2 indicates that persons occupying this position are required to carry a firearm. Hyland subsequently applied for the position of Investigator V, a job which also requires possession of a gun. The district judge's decision, and our opinion, pertains to both applications.

2. In denying the Department's motion for summary judgment, the district judge also ruled that the Department's refusal to certify Hyland's eligibility on the basis of an erroneous interpretation of the federal gun laws deprived Hyland of due process rights. 402 F.Supp. at 92–3. In addition, the judge ruled that if the Department's "action was not done in good

the statutes and the relevant cases compels us to agree.

## II

### A.  18 U.S.C. § 922(h)

■ The Department first argues that the district judge erroneously concluded that "section 922(h)(1) would not prevent [Hyland] from carrying a firearm as an Adult Corrections Officer II." 402 F.Supp. at 88.  This section provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Because of Hyland's prior armed robbery conviction, he falls squarely within the prohibition of section 922(h)(1).  The district judge concluded, however, that 18 U.S.C. § 925(a)(1) would except Hyland from section 922(h)(1)'s proscription.  Section 925(a)(1) provides:

> The provisions of this chapter [which includes section 922] shall not apply with respect to the . . . receipt . . . of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, . . . any State or any department, agency, or political subdivision thereof.

It is undisputed that any firearm Hyland might be permitted to carry in the position he seeks would be owned by, and used exclusively for, the state.  We agree with the district judge that the plain terms of section 925(a)(1) remove firearms owned by

the state and used exclusively for its purposes from the limitations of section 922. We therefore reject the Department's assertion that section 922 justifies its refusal to consider Hyland's application for employment as an ACO–2.

### B.  18 U.S.C. App. § 1202(a)

Section 1202(a) provides in part:

> Any person who . . . has been convicted by a court . . . of a state . . . of a felony, . . . and who receives, possesses, or transports in commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.[3]

■ Here again, Hyland falls squarely within the plain terms of this prohibition. 18 U.S.C. App. § 1203, however, provides two specific exceptions to the broad terms of section 1202(a).  Section 1203 provides:

> This title [including section 1202(a)] shall not apply to—
>
> (1) any prisoner who by reason of duties connected with law enforcement has expressly been entrusted with a firearm by competent authority of the prison; and
>
> (2) any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.

Although neither of these exceptions expressly encompasses Hyland, the district

---

faith, [Hyland] would have a valid claim of discrimination and denial of the equal protection of the laws." *Id.* at 94.

Although the Department apparently continued to argue in the trial court that its interpretation of the gun laws, even if erroneous, did not deny Hyland protected constitutional rights, it has not brought this issue before us. We therefore confine our opinion to the correctness of the district judge's interpretation of the federal gun laws.  We express no opinion on whether the Department's action, if erroneous, would have deprived Hyland of constitutional rights.

**3.**  Sections 922(h) and 1202(a) are from titles IV and VII respectively of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197 (1968).  Even though the two sections were part of the same bill, the broad overlap between them is obvious. *See United States v. Bass,* 404 U.S. 336, 341–43, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).  This may be explained in part by the fact that "Title VII was a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act.  The Amendment was hastily passed, with little discussion, no hearings, and no report." *Id.* at 344, 92 S.Ct. at 52 (footnote omitted).

judge concluded that the legislative history and principles of statutory construction compelled the creation of a "judicially carved exception to Section 1202(a)(1) . . .." 402 F.Supp. at 91. Specifically, the district judge focused on the language of section 1203(1) which permits a prison authority to entrust a prisoner with a firearm. On this basis, the district judge opined that

> [i]t defies sensibility that Congress intended it to be permissible for an armed robber who is still serving his prison term to be able to carry a weapon to further prison interests (as permitted by 1203(1)) but the minute he is discharged and employed as a correctional officer *and does the same thing*, he is in violation of the law.

*Id.* (footnote omitted).

We disagree and hold that section 1202(a) does prohibit Hyland from carrying a firearm under these circumstances. First, the Supreme Court has clearly indicated that the federal gun laws at issue here are intended to have, and should be given, the broadest permissible application. *See Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (section 1202 requires only "the minimal nexus that the firearm have been, at some time, in interstate commerce"); *Barrett v. United States*, 423 U.S. 212, 213, 96 S.Ct. 498, 499, 46 L.Ed.2d 450 (1976) (section 922(h) applies to "acquisition of a firearm that previously, but independently of the purchaser's receipt, had been transported in interstate commerce").[4]

In our view, fidelity to the Supreme Court's assessment of the legislative intent of these provisions requires us to reject a judicial interpretation which is not warranted by the express terms of the statutes. Congress did not see fit to create a third exception to the broad sweep of section 1202 in order to permit felons to carry firearms as prison guards; there is no reason to create such an exception from the bench.

In addition, we do not agree that refusing to create such an exception results in an "absurdity" in light of the express exception for prison trusties. 402 F.Supp. at 91. We believe that legitimate legislative considerations could have motivated Congress to create the exception for trusties, while declining to do so for would-be guards. For example, a trusty is much more rigorously supervised than is a guard. Most significantly, the trusty, unlike the guard, is himself in custody and thus poses substantially less of a threat to the general public. Thus, the creation of an exception to section 1202 for trusties but not for guards is not so irrational as to require judicial correction.

### III

Hyland argues that our refusal to create the proffered exception to section 1202 results in a conflict—and therefore a preemption problem—with Hawaii law. Hawaii's statutes expressly exempt state employees from Hawaii's prohibition against possession of a firearm by certain felons. *See* Haw.Rev.Stat. §§ 134–7(b), 134–11(3). Thus, argues Hyland, to construe federal law to prohibit a felon from possessing a firearm during the course of his duties as a state employee creates an unnecessary preemption problem.

This argument is without merit. In *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc) we held that a state felony conviction which had been expunged pursuant to a statute which "released [the felon] from all penalties and disabilities resulting from the offense or crime of which he has been convicted" was not erased for purposes of the prior felony element of section 1202. We stated that there was no preemption issue because there was simply "no conflict" between section 1202 and the

---

4. The Court's rulings in *Scarborough* and *Barrett* were premised in part on Congress' intent that the Omnibus Crime Control and Safe Streets Act should sweep "broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett, supra*, 423 U.S. at 218, 96 S.Ct. at 503; *Scarborough, supra*, 431 U.S. at 572, 97 S.Ct. 1963.

state expunction statute. *Id.* at 886 n.5. Although the expunction statute could determine the status of the conviction for purposes of state law, it could not "rewrite history" for the purposes of "the administration of the federal criminal law or the interpretation of federal criminal statutes." *Id.* at 887 (Sneed, J., concurring in result). We believe this principle is controlling here.

In this case, Haw.Rev.Stat. § 134–11(3) exempts state employees from the operation of Hawaii's gun laws. Congress has not chosen to create a parallel exception for section 1202(a). Although section 134–11(3) determines the legality of a certain act under state law, it has no impact on the legality of the same act under federal law. Simply put, Congress has chosen to prohibit an act which Hawaii has chosen not to prohibit; there is no conflict between section 1202 and section 134–11(3).

We therefore hold that the Department was correct in its determination that section 1202 prevented Hyland's employment in circumstances which would require him to carry a firearm. The judgment of the district court is reversed.[5]

REVERSED.

---

**5.** Hyland's final argument is that a federal statute which operates to prevent the state's selection of certain persons for prison guards is an impermissible intrusion into state affairs. *See National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). We disagree. First, the federal rule challenged here, unlike that in *Usery,* is aimed specifically at individual conduct and its impact on the states is very indirect. 426 U.S. at 845, 852, 854, 96 S.Ct. 2465. In any event, a federal criminal law which has the collateral effect of preventing convicted felons from being employed as prison guards does not "significantly alter or displace the State's ability to structure employer-employee relationships in . . . areas . . . typical of those performed by state and local governments . . . ." *Id.* at 851, 96 S.Ct. at 2474. Framing the issue as did the Court in *Usery,* the federal rule challenged here does not take from the state one of the " 'functions essential to separate and independent existence'." *Id.* at 845, 96 S.Ct. at 2471.