**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kevin C. PATZ, Julienne J. May, Shelly Mae Douglas, Jack Rubenstein, Mary E. Williams, James W. Douglass, Luciae Smith-Mueller, Louis W. Ladenberger, Christine M. Hassenstab, David L. Jackman, Taeko Miwa, Geoffrey Edwards and Margaret L. Lunam, Defendants-Appellants.**

**Nos. 77–3177, 77–3583, 77–3491 to 77–3498, 77–3616, 77–3617 and 77–3756.**

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1978.

---

David L. Shorett, Keith L. Kessler, Irwin H. Schwartz (argued), Seattle, Wash., Malcolm Burnstein, Berkeley, Cal., for defendants-appellants.

Francis J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before TRASK and SNEED, Circuit Judges, and SKOPIL,* District Judge.

SNEED, Circuit Judge:

Patz and the other twelve appellants challenge their convictions for violating 18 U.S.C. § 1382, which makes it unlawful to enter a military installation for any purpose prohibited by law or lawful regulation.[1] They argue that the district court erred in refusing to find that their actions were mandated by the principles of the Nuremberg judgment and in failing to find that their actions were justified under principles of international law and the common law defense of justification. Appellants also argue that use of the Washington state trespass statute to supply the "purpose prohibited by law" was improper. Because we agree that the government failed to prove entry for a purpose prohibited by law, we reverse the convictions. Accordingly, we do not have to reach appellants' other arguments based on principles of international law.

## I.

### Facts.

This action grew out of a protest against the Bangor Naval Submarine Base in Bremerton, Washington. Appellants were among a group of people who climbed over a fence and entered the base on July 4, 1977. Their stated purpose was to have a picnic and discuss with base personnel their objections to construction of the Trident

---

* Hon. Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 1382 provides:

    "Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation; . . . Shall be fined not more than $500 or imprisoned not more than six months, or both."

nuclear submarine at the facility. The entry was peaceful, but the group was stopped by military police and asked not to proceed any farther. Several arrests were then made.

The information filed against the appellants charged that they "did willfully go upon the Naval Submarine Base, Bangor, a Naval installation, for a purpose prohibited by law, that is, trespass in violation of Chapter 9A.52, Revised Code of Washington." All appellants went to trial on stipulated facts which admitted they had willfully gone on the base and that their act and intent satisfied each element of the crime of trespass contained in Wash.Rev. Code § 9A.52. The stipulations expressly reserved the right to raise issues of law and to present evidence in defense.[2] Following a trial at which the defendants presented the theories that their actions were either mandated or justified by principles of international law, they moved for judgment of acquittal, alleging a failure to prove that they had entered for a purpose prohibited by law. The trial court rejected the argument that the Washington trespass statute was inapplicable as well as the arguments based on international law. Judgments of guilty were entered as to all defendants.

## II.

### Holding.

Appellants continue to argue that it was improper to incorporate Wash.Rev.Code § 9A.52 to establish that their entry upon the Base was for "a purpose prohibited by law." We agree. State law that makes criminal, as we believe Wash.Rev.Code § 9A.52 does, any entry upon the premises of another without permission would, if incorporated into 18 U.S.C. § 1382, make the latter a general trespass statute. That is, within the limits of Washington, 18 U.S.C. § 1382 would read, in effect, "Whoever, within the jurisdiction of the United States and the State of Washington goes upon any

military . . . installation *without first obtaining permission to do so* shall be fined not more than $500 or imprisoned not more than six months, or both." We do not think Congress intended this result. Had it intended to make entry without permission a crime, it could have done so. It did not.

■ We do not hold that "a purpose prohibited by law" required by 18 U.S.C. § 1382 can never be established by reference to state law. We merely hold that to incorporate Wash.Rev.Code § 9A.52 is to alter impermissibly the scope and meaning of 18 U.S.C. § 1382.

## III.

### *Wash.Rev.Code § 9A.52 as the Source of "A Purpose Prohibited By Law."*

■ The usual situation in which 18 U.S.C. § 1382 is applicable is that in which the entry is with knowledge that the facility has been closed to the public by properly promulgated regulations of the military commander. Such an entry is for a "purpose prohibited by regulation." *See United States v. Floyd,* 477 F.2d 217, 222 (10th Cir.), *cert. denied,* 414 U.S. 1044, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973); *Holdridge v. United States,* 282 F.2d 302, 309 (8th Cir. 1960). Military commanders have broad authority to promulgate such regulations. *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The availability of this authority and the ease with which it can be exercised extinguishes any thought that incorporation of a statute like Wash. Rev.Code § 9A.52 into 18 U.S.C. § 1382 is necessary to protect the security of military installations.

Not only is incorporation without rational support on the grounds of security, it also would make a crime an entry without permission, a type of entry substantially less culpable than one made knowingly in violation of an explicit military regulation.

---

**2.** Two of the appellants' stipulations differed from this form. One failed to state that there was an intent sufficient to satisfy the Washington trespass statute, while the other general-

ly admitted entering the base without permission. These differences are not crucial in light of our disposition of this case.

That such would be the result of permitting Wash.Rev.Code § 9A.52 to supply the prohibited purpose becomes clear when the scope of Washington's statute is analyzed.

Wash.Rev.Code § 9A.52.070 & 9A.52.080 provide that a person is guilty of criminal trespass if he knowingly enters or remains unlawfully in a building or upon real property which is fenced or in or upon premises of another.[3] It does not appear to require a specific intent to violate the law, but rather applies to all who are in a place where they do not have a right to be. *See Ahmed v. Rockefeller*, 308 F.Supp. 935 (S.D.N.Y.1970) (interpreting a similar New York trespass statute). This construction is strengthened by the fact that proof that the premises were open to members of the public and that the actor complied with all lawful conditions imposed on access to, or remaining on, the premises is specifically listed as a defense to the trespass statute. Wash.Rev.Code § 9A.52.090. If a special defense is needed, the coverage of the statute must be as broad as we suggest. We believe, as we have indicated, that any going on to the property of another in the absence of express permission would be covered by the statute. To fasten this extension to the reach of 18 U.S.C. § 1382 goes beyond what we are prepared to say Congress intended. Such legislative history as there is suggests nothing to the contrary.

## IV.

### Analogous Authorities.

Our conclusion is supported by analogy to two lines of authority. The Supreme Court has held that it "must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law." *Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 485, 87 L.Ed. 640 (1943). In that case the Court was called on to interpret a federal bank robbery statute which made it a crime to enter with the intent to commit any felony. The defendant was charged with entering with intent to utter a forged check, a felony under state, but not federal, law. The Court, noting the desirability of uniform application of federal laws, concluded that there must be an intent to commit a crime classified under federal law as a felony before the elements of the offense could be satisfied. While this rationale is broader than that on which we rest our present narrow holding, a concern about uniformity is appropriate here. Our holding serves the interest of uniformity in the application of federal laws.

A second line of cases to which we refer pertains to the policy behind the Assimilative Crimes Act, 18 U.S.C. § 13[4], in which Congress has explicitly incorporated some state law. The Supreme Court has reasoned that after Congress has once defined a penal offense, there is no reason to believe that it has authorized such definition to be enlarged by application of state law. *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). There the federal rape statute set the age of consent at 18, while Arizona law defined it as 16. The Court refused to allow the use of Arizona law in the case of an alleged statutory rape of a female between the ages of 16 and 18, holding that the Assimilative

---

3. Wash.Rev.Code § 9A.52.070 provides:

"A person is guilty of criminal trespass in the first degree if he knowingly enters or remains unlawfully in a building or on real property adjacent thereto or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders."

Wash.Rev.Code § 9A.52.080 provides:

"A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another."

4. 18 U.S.C. § 13 provides:

"Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title [federal enclaves], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."

Crimes Act was not designed to modify or repeal existing federal law.[5]

Two recent decisions under the Assimilative Crimes Act do not call into question the *Williams* rationale. While these cases rejected the *Williams* analysis on the specific facts before them, they do not question its use in an appropriate factual situation. Thus, in *United States v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977) the court found that labeling and packaging requirements imposed on fireworks by the Consumer Product Safety Act and the Federal Hazardous Substances Act did not preclude prosecution under a state law prohibiting possession of fireworks. The court relied on the fact that the only applicable federal law was merely regulatory, rather than prohibitory, and on specific legislative history indicating that Congress desired to leave to the states the final decision whether to ban fireworks or not. Similarly in *United States v. Smith*, 574 F.2d 988 (9th Cir. 1978) the court found no evidence of Congressional intent to make sodomy a federal crime and therefore allowed prosecution under a state rape statute which applied to acts of sodomy.

These two lines of authority accordingly provide analogies which caution us not to yield easily to urgings to make state criminal law the source of federal criminal law. To yield requires some showing that Congress intended to use the state law as a source. We cannot bring ourselves to believe that Congress intended to so use Wash.Rev.Code § 9A.52.

Because we hold that the government improperly relied on Washington trespass law to supply the purpose prohibited by law, we must reverse the convictions of the appellants. It is thus unnecessary to address appellants' arguments based on international law.

REVERSED.

---

5. The court in *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946) also relied on the fact that the precise acts in question there were punishable under some federal statute, viz. the adultery laws. Some courts have interpreted this to mean that the precise act must be covered by federal law before use of state law is inappropriate. *Fields v. United States*, 438 F.2d 205 (2d Cir.), *cert. denied*, 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). We do not consider the absence of a federal criminal statute applicable to the acts committed here to be a crucial factor in the analysis. We find the statements in *Williams* regarding the lack of authority to expand federal crimes to be a persuasive argument even standing alone.

This concern with expansion of federal crimes expressed in *Williams* has also been applied to preclude use of a state statute providing enhanced punishment for armed robbery when a federal robbery statute exists. *Shirley v. United States*, 554 F.2d 767 (6th Cir. 1977). Similarly, the fact that the federal firearms statute requires proof of an interstate nexus, while a state firearm possession statute did not, was found not to be a significant enough difference to justify use of the state law. *United States v. Butler*, 541 F.2d 730 (8th Cir. 1976).