**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Gerald Ray BERGEMAN, Defendant-Appellee.**

No. 78–2219.

United States Court of Appeals, Ninth Circuit.

Jan. 31, 1979.

Rehearing Denied March 21, 1979.

---

Jeffrey G. Howe, Asst. U.S. Atty. (argued), Boise, Idaho, for plaintiff-appellant.

Franklin Smith (argued), Idaho Falls, Idaho, for defendant-appellee.

Before WRIGHT and ANDERSON, Circuit Judges, and TAKASUGI,* District Judge.

**J. BLAINE ANDERSON, Circuit Judge:**

The defendant was charged with possession of firearms by a convicted felon in violation of 18 U.S.C.A. § 922(h)(1).[1] The district court dismissed the indictment, finding that the prior conviction was invalid for purposes of 18 U.S.C.A. § 922(h)(1), since it had been dismissed under an Idaho statute which allows the expunction of state criminal convictions.[2] We reverse.

Jurisdiction of the district court was based on 18 U.S.C.A. § 3231. Jurisdiction of this court is proper under 28 U.S.C.A. § 1291.

*FACTUAL BACKGROUND*

The defendant was found guilty of receiving stolen property. On November 13, 1973, the state court ordered the defendant imprisoned in the Idaho State Penitentiary for five years. (C.R. 35) However, the state court ordered that the defendant's sentence be withheld on condition that he serve four months in the county jail, pay a $1,000.00 fine, pay court costs, and serve the balance of the term on parole. (C.R. 35–36)

On March 30, 1977, after the defendant's probation officer petitioned the court, the state court entered an order discharging the defendant from further probation supervision and dismissing the charges against the defendant. (C.R. 25)

Based upon this dismissal by the state court, the defendant moved to dismiss the

---

\* *The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.*

1. The statute speaks in terms of "receipt" of firearms; for purposes of our decisions we refer to it as "possession." 18 U.S.C.A. § 922(h)(1) provides:
   "It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   \* \* \* \* \* \*
   to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

2. Idaho Code § 19–2604(1) provides:
   "If sentence has been imposed but suspended, or if sentence has been withheld, upon application of the defendant and upon satisfactory showing that the defendant has at all times complied with the terms and conditions upon which he was placed on probation, the court may, if convinced by the showing made that there is no longer cause for continuing the period of probation, and if it be compatible with the public interest, terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant; and this shall apply to the cases in which defendants have been convicted and granted probation by the court before this law goes into effect, as well as to cases which arise thereafter. The final dismissal of the case as herein provided shall have the effect of restoring the defendant to his civil rights."

federal indictment claiming that he had not been convicted of a crime punishable by imprisonment for a term exceeding one year, as required by 18 U.S.C.A. § 922(h)(1). (C.R. 22) The district court agreed with defendant's contention and dismissed the charges against him. (C.R. 86)

## QUESTION PRESENTED

■ The sole question presented on appeal is whether a person who has had a state criminal conviction dismissed pursuant to the Idaho expunction statute may still be considered a person who has been convicted of a crime punishable for a term exceeding one year within the meaning of 18 U.S.C.A. § 922(h)(1). This involves the construction and interpretation of federal law, and the extent to which, if at all, a federal statute incorporates or refers to a state's law. *United States v. Pricepaul*, 540 F.2d 417, 424 (9th Cir. 1976), and *see Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 208, 66 S.Ct. 992, 90 L.Ed. 1172 (1946). In view of the recent decisions of this court, some of which were decided after the district court's decision in the present case,[3] we conclude that despite the state expunction, the defendant is still a convicted felon within the terms of 18 U.S.C.A. § 922(h)(1), and therefore reverse.

## DISCUSSION

Our analysis of the question presented for review must begin with *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc). Potts was charged with possession of a firearm by a convicted felon.[4] However, the prior felony conviction had been expunged under a Washington state statute. All twelve members of this court agreed that despite the expunction of the conviction under state law, it still could be used as an element of the federal crime.

3. *United States v. Herrell*, 588 F.2d 711 (9th Cir. 1978); *United States v. Patz*, 584 F.2d 927 (9th Cir. 1978); *Hyland v. Fukuda*, 580 F.2d 977 (9th Cir. 1978).

4. Potts was charged under 18 U.S.C.A. App. § 1202(a)(1) which prohibits essentially the same offense as 18 U.S.C. § 922(h)(1).

Four other judges joined in the opinion by Judge Koelsch. Judge Wright concurred, recommending that the court adopt a fair warning system to advise all of the other people who were affected by the decision. And Judge Sneed, joined by five other judges, concurred in the result, but disagreed with the analysis used by Judge Koelsch.

The Koelsch opinion analyzed the Washington statute, Washington court interpretations of it and concluded that, even in state courts, despite the expunction, the conviction would still be used as an "essential element of a subsequent crime." 528 F.2d at 885. Observing no conflict between state and federal law, the Koelsch opinion declined to "consider the extent to which the federal statute may preempt arguably conflicting state law." 528 F.2d at 886 n. 5. On the other hand, the Sneed opinion criticized the analysis of state law as immaterial. According to the concurring opinion's view, under the federal criminal statute, it was only necessary to look to the original conviction under state law, since Congress had chosen to consider state expunction statutes irrelevant. 528 F.2d at 887–888.[5]

As a district judge, this author observed that there was a conflict between the Koelsch and the Sneed opinions on the question of whether federal law or state law determines a person's status as a convicted felon. *United States v. Locke*, 409 F.Supp. 600, 604 n. 4 (D.Idaho 1976), *aff'd*, 542 F.2d 800 (9th Cir. 1976). However, after further reflection, and in view of the subsequent decisions of this court, the difference appears to have been resolved in favor of both viewpoints.[6]

This court placed any doubts about a possible conflict between the Koelsch and

5. *Potts* was similarly construed in *United States v. Houston*, 547 F.2d 104, 106–107 n. 5 (9th Cir. 1976).

6. *See United States v. Locke*, 542 F.2d 800, 801 (9th Cir. 1976) (Court relied upon both the Koelsch and Sneed opinions in *Potts*); *United States v. Herrell*, 588 F.2d 711 (1978) (Court followed Koelsch opinion since the Arizona

Sneed opinions in *Potts* to rest in *Hyland v. Fukuda*, 580 F.2d 977 (9th Cir. 1978). The question of whether state or federal law would control a convicted felon's right to carry a firearm was resolved in favor of federal law, relying upon the Sneed opinion in *Potts.* We said in part:

> "This argument is without merit. In *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc) we held that a state felony conviction which had been expunged pursuant to a statute which 're-leased [the felon] from all penalties and disabilities resulting from the offense or crime of which he has been convicted' was not erased for purposes of the prior felony element of section 1202. We stated that there was no preemption issue because there was simply 'no conflict' between section 1202 and the state expunction statute. *Id.* at 886 n. 5. *Although the expunction statute could determine the status of the conviction for purposes of state law, it could not 'rewrite history' for the purposes of 'the administration of the federal criminal law or the interpretation of federal criminal statutes.'* *Id.* at 887 (Sneed, J., concurring in result). We believe this principle is controlling here." (emphasis added)

580 F.2d at 980–981. This principle also controls our result in the present case.

Our conclusion is supported by the legislative history of 18 U.S.C. § 922(h)(1). This provision was originally adopted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968. One of the principal purposes of Title IV was to keep firearms out of the hands of those who had a criminal background. Sen.R. No. 1097, 90th Cong., 2nd Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, p. 2112. Consistent with this purpose, Congress made it a crime for a convicted felon to possess a firearm. 18 U.S.C. § 922(h)(1). Congress specifically explained the term "convicted felon" as used in Title IV.[7] Congress also specifically provided a method by which a person who has been convicted of a felony may lawfully possess firearms.[8] Nowhere in the statute or in the legislative history did Congress make an exception from the operation of Title IV's sanctions for felons who have had their convictions expunged under state law. *United States v. Potts*, 528 F.2d 883, 887 (9th Cir. 1975) (en banc) (Judge Sneed concurring); and see *United States v. Mostad*, 485 F.2d 199, 200 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563. Following the familiar precept of statutory construction, *expressio unius est exclusio alterius*, we decline to supply such an exception. To do so would be inconsistent with the broad purpose of Title IV which was to prevent those with criminal backgrounds

---

expunction statute involved there was almost identical to the Washington expunction statute involved in *Potts*); *Hyland v. Fukuda*, 580 F.2d 977 (9th Cir. 1978) (Court followed Sneed opinion in *Potts*).

**7.** The statute speaks in terms of persons who have been convicted of a "crime punishable by imprisonment for a term exceeding one year," which we have simplified to "convicted felon" for purposes of our discussion. 18 U.S.C.A. § 921(a)(20) provides:

> "The term 'crime punishable by imprisonment for a term exceeding one year' shall not include (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices as the Secretary may by regulation designate, or (B) any State offense (other than one involving a firearm or explosive) classified by the laws of the State as a misde-

meanor and punishable by a term of imprisonment of two years or less."

**8.** 18 U.S.C.A. § 925(c) provides:

> "A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. . . ."

from obtaining firearms. *See Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974).[9]

Additional support for our decision is found in the rather anomalous situation which would otherwise result. If a conviction were to be determined by application of the different expunction statutes of each state, then the application of federal criminal sanctions would depend solely upon where the defendant's previous conviction had occurred. If the person had his conviction expunged under either the Washington or Arizona statutes, then he could not possess a firearm. *United States v. Herrell*, 588 F.2d 711 (9th Cir. 1978) (Arizona); *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975) (en banc) (Washington). Whereas, if the person had his conviction expunged under the Idaho statute, then he could possess a firearm. Congress certainly could not have intended a federal criminal law to be applied in such a patchwork fashion. In the absence of an expression to the contrary, Congress gener-ally intends federal criminal law to receive a uniform application. *See Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943); *United States v. Patz*, 584 F.2d 927, 930 (9th Cir. 1978).

Our conclusion is consistent with prior holdings of this court in the context of deportation proceedings. Despite state expunction of convictions, we have held that the convictions are still valid and may be used as a basis for deportation under 8 U.S.C.A. § 1251. *See Ocon-Perez v. Immigration and Naturalization Service*, 550 F.2d 1153, 1154 (9th Cir. 1977); *Tsimbidy-Rochu v. Immigration and Naturalization Service*, 414 F.2d 797, 798 (9th Cir. 1969); *de la Cruz-Martinez v. Immigration and Naturalization Service*, 404 F.2d 1198, 1200 (9th Cir. 1968), *cert. denied*, 394 U.S. 955, 89 S.Ct. 1291, 22 L.Ed.2d 491.[10]

We hold that the expunction of a conviction under Idaho law does not change the status of a person as a convicted felon for purposes of 18 U.S.C.A. § 922(h)(1).[11]  The

---

**9.** *See also Hyland v. Fukuda*, 580 F.2d 977 (9th Cir. 1978), where we cited *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), and *Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), and observed that "the Supreme Court has clearly indicated that the Federal gun laws at issue here are intended to have, and should be given the broadest permissible application." 580 F.2d at 980.

**10.** In *de la Cruz-Martinez*, this court reasoned as follows:

"Deportation is a function of federal and not of state law. In the context of a narcotics conviction, deportation is a punishment independent from any that may or may not be imposed by the states. While it is true that the same event, the state conviction, triggers both sets of consequences, it would be anomalous for a federal action based on a state conviction to be controlled by how the state chooses to subsequently treat the event. It is the fact of state conviction, not the manner of state punishment, that is crucial. As we stated in *Reyes v. United States*, 258 F.2d 774 (9th Cir. 1958) and repeated with approval in *Garcia-Gonzales*, supra,

'It would defeat the purpose * * * (of federal law) if provisions of local law, dealing with rehabilitation of convicted persons, could remove them from the ambit of (federal penal enactments). * * * We do not think Congress intended such a result.' "

404 F.2d at 1200. This rationale under the immigration laws is equally applicable to the present situation under Title IV of the Omnibus Crime Control and Safe Streets Act of 1968.

**11.** Other decisions have arrived at the same conclusion about the effect state expunction statutes have on a person's status as a "convicted" felon under the Omnibus Crime Control and Safe Streets Act of 1968. *United States v. Hayes*, 535 F.2d 479 (8th Cir. 1976); *United States v. Kelly*, 519 F.2d 794 (8th Cir. 1975), *cert. denied*, 423 U.S. 926, 96 S.Ct. 272, 46 L.Ed.2d 254; *United States v. Mostad*, 485 F.2d 199 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563. *Cf. Thrall v. Wolfe*, 503 F.2d 313 (7th Cir. 1974) (involving the effect of a state pardon to person's status as a convicted felon under Title IV). *But see United States v. Matassini*, 565 F.2d 1297, 1309–1310 n. 26 (5th Cir. 1978).

*Matassini* does not support Judge Takasugi's views in our opinion. In *Matassini* the Fifth Circuit was dealing with the effect of a 1955 Florida "full and complete pardon of a [prior] offense, thereby restoring to him full and complete civil rights." The Fifth Circuit was not dealing with a state expunction statute. The bracketed word [expunction] in the quotation from *Matassini* on page 6 of Judge Takasugi's dissent (from 565 F.2d at 1310, no. 26) is "pardon" in the original and to insert "expunction" may be somewhat misleading. In any event, 18

judgment of dismissal by the district court is REVERSED.

TAKASUGI, District Judge, dissenting:

I respectfully dissent.

Discussion begins, as it did with the majority opinion, with an analysis of *United States v. Potts,* 528 F.2d 883 (9th Cir. 1975) (en banc). In *Potts,* this court had the opportunity to define the extent to which the federal criminal statute may preempt conflicting state law. Judge Koelsch, joined by five other judges, did not reach the resolution of that issue. While acknowledging the expunction statute, Judge Koelsch's opinion noted that there was a limitation proviso in the statute which stated "[t]hat in any subsequent prosecution, for any offense, such prior conviction may be pleaded and proved, and shall have the same effect as if probation had been granted, or the information or indictment dismissed." Additionally, he noted that a conviction, even though expunged, could be used for impeachment purposes in any subsequent prosecution. Judge Koelsch thereby concluded that the Washington expunction statute effectuated only a "partial erasure" and that such a conviction could form the predicate for § 1202(a)(1) liability.[1] The opinion, however, did not reach the preemption issue:

> "As we perceive no conflict between [the Washington expunction statute] and § 1202(a)(1), we need not, and do not, consider the extent to which the federal statute may preempt arguably conflicting state law."

*Id.* at 886 n. 5.

Judge Sneed, joined by five other judges, concurred in the result but upon a different ground. He viewed the federal statute as preempting state law, i. e., state expunction statutes were irrelevant for purposes of § 1202(a)(1):

> "The relevant state law to be examined in this determination does not include expunction statutes. Such statutes do not rewrite history; they merely provide that previous history is immaterial for certain purposes under state law. It is not within the power of the state to make such history immaterial to the administration of the federal criminal law or the interpretation of federal criminal statutes. Only Congress can do that."

*Id.* at 887.

While the Koelsch and the Sneed opinions both held that under Washington law, a convicted felon, whose record had been expunged, could still be subject to § 922(h)(1), they did so under divergent theories.

The writer of the majority opinion in the case at bar, states that while he had once recognized a conflict between the opinions, "after further reflection, and in view of the subsequent decisions of this court, the difference appears to have been resolved in favor of both viewpoints." While not entirely clear, the apparent reason for the majority's position that the conflict has been resolved by this court is simply the fact that this court has invoked both theories in addressing later cases which raise issues similar to *Potts.* The majority cites *United States v. Herrell,* 588 F.2d 711 (9th Cir. Nov. 16, 1978), where this court followed the Koelsch opinion, and *Hyland v. Fukuda,* 580 F.2d 977 (9th Cir. 1978), where this court adopted the Sneed opinion.[2] The

---

U.S.C.App. § 1203(2) contains an express exemption for "any person who has been pardoned by . . . the chief executive of a State . . . ." No express exemption appears with respect to state expunction statutes. To follow *Matassini* in this circuit would be, in our opinion, a clear departure from our prior cases on this precise issue.

1. § 1202(a)(1), like § 922(h)(1), reaches those individuals "who [have] been convicted." Accordingly, cases that have examined the question of when is a person "convicted" for purposes of § 1202, will themselves be examined and discussed to aid in the resolution of the similar issue presented to this court.

2. Also cited is *United States v. Locke,* 542 F.2d 800 (9th Cir. 1976). The majority asserts that this "Court relied upon both the Koelsch and Sneed opinions in *Potts,*" in *Locke.* I cannot agree. The appellant, who had been convicted in Idaho of burglary, did not even seek to have his record expunged. This court, in *Locke,* therefore, did not even reach the question presented in *Potts:*

> "The appellant admits that he never sought relief from his conviction under the pertinent

mere fact that both opinions have been utilized by this court, however, fails to explain how the difference between the opinions has been resolved.

The majority goes on further to state that a possible conflict between the opinions has been resolved in *Hyland v. Fukuda, supra*—"The question of whether state or federal law would control a convicted felon's right to carry a firearm was resolved in favor of federal law [in *Hyland*]."

A careful reading of *Hyland,* however, reveals serious flaws in the rationale.

In *Hyland,* this court addressed the question of whether there was a preemption problem in an apparent conflict between a Hawaii state statute exempting state employees from the operation of Hawaii's gun laws, Haw.Rev.Stat. § 134–11(3), and § 1202(a)(1), which provides no such exemption. The *Potts* case was cited by this court, in *Hyland,* but it inexplicably failed to fully address the Koelsch opinion. Referring to *Potts,* this court stated:

"[W]e held that a state felony conviction which had been expunged pursuant to a statute which 'released [the felon] from all penalties and disabilities resulting from the offense or crime of which he has been convicted' was not erased for purposes of the prior felony element of Section 1202. We stated that there was no preemption issue because there was simply 'no conflict' between section 1202 and the state expunction statute. [Citation omitted]."

*Id.* at 980–1. The decision failed to point out that the expunction in *Potts* was only a partial one. It was that fact which led Judge Koelsch to conclude that there was no conflict between § 1202 and the state expunction statute and that, therefore, the preemption issue need not be reached. The

decision in *Hyland* went on to state, immediately following the above-quoted language:

"Although the expunction statute could determine the status of the conviction for purposes of state law, it could not 're-write history' for purposes of the 'administration of the federal criminal law or the interpretation of federal criminal statutes.' [Citation omitted]. We believe this principle is controlling here."

*Id.* at 981.

The conflict in *Potts* was not set out in *Hyland.* Instead, this court erroneously cited the Sneed opinion as the holding in *Potts.* The *Hyland* case, therefore, does not resolve the conflict in favor of both viewpoints.

Additionally, it should be noted that there seems to be an inconsistency between the finding in *Hyland,* that the Sneed opinion was controlling, and the remaining part of the opinion. The Sneed opinion acknowledged a preemption issue and decided that the issue should be resolved in favor of federal law. In *Hyland,* however, this court, rather than determining whether federal law had preempted state law, concluded that there was no conflict, in that the state statute was only effective in interpreting state, not federal law. "Conflict", used in this sense, would imply that there could never be a preemption problem since federal and state law operate on separate and non-intersecting planes. The threshold question of the Sneed opinion of whether there was a preemption issue was not even reached in *Hyland.* To hold, therefore, that the Sneed opinion is controlling, is inexplicable.

To suggest that the conflict between the Koelsch and Sneed opinions, in *Potts,* has been put to rest, in *Hyland,* and that the

Idaho statute. We, therefore, are not concerned with an expunction statute similar to that before the court in *Potts* . . . ."

*Id.* at 800–1.

While this court, in *Locke,* expressed the view that the Koelsch and Sneed opinions, read together, supported the conclusion reached, it failed to state how the opinions could be read

together in light of the conflict existing between the opinions. Additionally, there are no facts, in *Locke,* suggesting the existence of some type of limiting proviso to the expunction statute. Implicit in any adoption of the Koelsch opinion, is the existence of a partial expunction.

question of whether state or federal law controls has been resolved in favor of federal law (the Sneed opinion), is further undermined by *United States v. Herrell, supra,* which was decided *after Hyland.* In *Herrell,* this court was faced with the identical question presented in the instant case, i. e., whether a convicted individual whose record was expunged, falls within the definition of "convicted" for purposes of § 922(h)(1). If the question had been put to rest in *Hyland,* one would have expected this court in *Herrell* to follow suit. The opinion in *Herrell,* which was authored by Judge Choy (who had concurred with Judge Sneed in *Potts*) and concurred with by Judge Sneed, however, adopted Judge Koelsch's opinion in rejecting appellant's contention that he was not "convicted" for purposes of § 922(h)(1), rather than merely stating that federal law controlled:

> "Arizona's expunction statute provides for the vacating of conviction, dismissal of charges, and restoration of civil rights. . . . However, a proviso to Ariz.Rev. Stat. § 13–1744 states that after a conviction is expunged 'the conviction may be pleaded and proved in any subsequent prosecution of such person for any offense as if the judgment of guilt had not been set aside.'

> In *United States v. Potts,* 528 F.2d 883 (9th Cir. 1975) (en banc), this court was faced with a claim similar to that of *Herrell.* In addition, the Washington expunction statute involved in that case had a proviso almost identical to that found in Ariz.Rev.Stat. § 13–1744. We decided in *Potts* that expunction under the Washington statute did not eliminate a prior state conviction as a basis for a federal conviction for possession of a firearm by a convicted felon. We find that *Potts*

controls *Herrell's* claim and thus reject this asserted error."

*Id.* at 713 (footnote omitted).

Since the difference between the opinions has not been resolved, the issue in the present case as to whether appellee, whose record was expunged, is "convicted" for purposes of § 922(h)(1) remains unresolved. The view taken in this dissent is that state law controls and that the expunction statutes are material in the determination of whether a person is "convicted." [3] I share the Fifth Circuit's opinion, as expressed in *United States v. Matassini,* 565 F.2d 1297 (5th Cir. 1978):

> "We have no doubt that Congress is free within constitutional limits, to choose its own indicia of dangerousness in constructing a regulatory scheme. It is not slavishly bound to follow the characterizations adopted by the states. But in Title IV, by identifying those subject to the proscription of § 922(h)(1) as 'any person . . . who has been convicted in any court . . .' Congress chose to rely, at least in part, on state criminal law. *We see no reason, in either the language or legislative history of Title IV, to doubt that Congress adopted the states' own definitions of conviction, including the effects of an [expunction] thereon.*"

*Id.* at 1310 n. 26 (emphasis added).[4]

This holding rests upon the view that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance. . . . This congressional policy is rooted in the same concepts of American federalism that have provided the basis for Judge-made doctrines." *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971).

---

**3.** The question of preemption, in the present case, must be squarely faced, as expunction under Idaho law would appear to be total rather than partial. Idaho § 19–2604. *See State v. Cliett,* 96 Idaho 646, 649 n. 2, 534 P.2d 476.

**4.** While the above-quoted language spoke of pardons rather than expunctions, the underlying issue of preemption in the context of § 922(h)(1) criminality remains the same. A

pardon is merely an executive absolution, while an expunction is a judicial one. The significant point is that each constitutes a state action. The *Matassini* case itself does not distinguish between pardons and expunctions; in the footnote from which the above quoted language is taken, the court discusses *Potts* without using any language to suggest that pardons and expunctions should be viewed differently.

Concern for protection of the federal-state balance is manifest in the rule of statutory construction which prohibits the enlargement of criminal statutes by interpretation. This doctrine is based not only on delegation of powers, but is also intended to preserve due process guarantees. *United States v. Gambling Devices,* 346 U.S. 441, 448, 74 S.Ct. 190, 98 L.Ed. 179 (1953). Justice Jackson explained the basis of this doctrine in *United States v. Gambling Devices,* stating:

> "[T]his Court will construe a statute in a manner that requires decision of serious constitutional questions only if the statutory language leaves no reasonable alternative. [Citation]. This is not because we would avoid or postpone difficult decisions. The predominant consideration is that we should be sure Congress has intentionally put its power in issue by the legislation in question before we undertake a pronouncement which may have far-reaching consequences upon the powers of the Congress or the powers reserved to the several states. . . . Judicial abstention is especially wholesome where we are considering a penal statute."

*Id.* at 449, 74 S.Ct. at 194. This rule preserves the due process protections including the presumption of innocence and fair notice and hearing requirements, since it requires that Congress speak in language that is clear and definite, to prevent the courts from deriving "criminal outlawry from some ambiguous implication." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 222, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1959).

However, it would be impractical for the courts to enforce a policy of total abstention in cases involving ambiguous provisions in criminal statutes. Thus an additional rule of statutory construction was developed to guide the resolution of ambiguity based on the same concerns of proper delegation and due process. The rule that evolved was enunciated in *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955):

> "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."

This rule has been applied to prevent imposition of multiple sentences for a single offense. *Bell v. United States, supra; Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). It has also been applied to prevent the inclusion of intrastate criminal activity under federal statutes regulating interstate travel for the purpose of carrying out illegal activity. *Rewis v. United States,* 401 U.S. 809, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *United States v. Gambling Devices, supra.* The previously cited cases all involved criminal activity governed by state law and arguably federal law. In each instance the courts were faced with the task of interpreting an ambiguous federal statute. The courts relied on the rule of lenity based on their concerns over the imposition of federal law in areas properly within the realm of state law enforcement and the overextension of limited federal law enforcement resources.

This court is faced with the same problem of ambiguity. The majority has, however, chosen to interpret § 922(h)(1) in such a manner that the states would be effectively denied the right to define the criminal status of persons who are charged with violations of their laws and who will be rehabilitated, if at all, under their programs. The interpretation would further interfere with state rehabilitation programs which offer expunction of criminal records in one form or another to promote speedy reassimilation of law offenders as useful members of society and to discourage recidivism. *Cf. United States v. Potts, supra* at 885 n. 3.

While it is recognized that in the absence of a plain indication to the contrary, it is generally assumed that Congress when enacting a statute, does not intend to make the application of the federal act dependent upon state law, *Jerome v. United States,* 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943), in the present case, there is a clear intention to the contrary. Pursuant to 18 U.S.C. § 927:

"No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together."

The federal definition of a "convicted" individual is not irreconcilable with state expunction statutes. Quite the contrary, the state expunction statutes when incorporated into § 922(h)(1) help to clarify the definition of the word "convicted" while allowing the state to pursue the equitable goals underlying expunction statutes.

The majority asserts that an anomalous situation would exist if we were to recognize state expunction statutes. A situation would be created whereby one would be subject to § 922(h)(1), if the state where the individual was convicted had only a partial expunction, while another person who had committed the same crime would not be convicted under § 922(h)(1), if the expunction was total. The majority further asserts that this situation would be inimical to uniform application. The very terms of § 922(h)(1), however, preclude national uniformity. Section 922(h)(1) reaches persons convicted "in any court of, a crime punishable by imprisonment for a term exceeding one year." By definition, the scope extends to those crimes for which the states wish to impose a possible sentence exceeding one year. States, of course, differ as to the length of a sentence for a particular crime. A situation is, therefore, created where an individual, who is convicted of a crime, falls within the scope of § 922(h)(1), while another individual, who has committed the identical crime, would not fall within the scope, because the convicting states differ as to the length of the sentence. To impliedly suggest that this comports with national uniformity, while recognition of expunction statutes creates an anomalous situation, eludes logic. If Congress truly intended national uniformity in § 922(h)(1), it would have described which particular crimes would subject an individual to § 922(h)(1),

rather than relying upon state laws, and explicitly provide that expunction statutes are irrelevant.

The immigration cases cited by the majority do not compel a similar finding in the present case. The Constitution has specifically granted to Congress plenary power over immigration and naturalization and a corollary of the plenary power is the need for uniform federal law. In contrast, penal enactment has historically been a power exercised by both Congress and the states. Lacking the luxury of achieving the complete uniformity of laws which can accompany a plenary power, the inevitable conflicts between state and federal law must be resolved by application of the preemption doctrine. Thus, the majority opinion's analogizing of the nonrecognition of state expunction statutes under the deportation statute to § 922(h)(1) fails to appreciate the disparate powers from which each statute derives.

Based on the aforementioned reasons, I would affirm the district court's ruling.