UNITED STATES of America

v.

**Cazmis KOZERSKI.**

**Crim. No. 81–00023–01–D.**

United States District Court,
D. New Hampshire.

July 20, 1981.

Helen J. Forsyth, Esq., Asst. U.S. Atty., Concord, N. H., for plaintiff.

Cazmis Kozerski, pro se.

## OPINION AND ORDERS

DEVINE, Chief Judge.

Pursuant to the Court's previous Order of June 24, 1981, a hearing on various pretrial motions filed by defendant was held on July 14, 1981.[1] The Court has reviewed the evidence, exhibits, legal memos, pleadings, and other documents on file, and now proceeds to resolution of the issues raised by said motions. For the purposes only of such decision, the factual background of the litigation appears to be as follows.

In May of 1969, defendant Kozerski was convicted in the state courts in Massachusetts for felony offenses committed in violation of the laws of that jurisdiction.[2] Following a period of confinement and parole, defendant was discharged, and in the summer of 1976 he was removed to Swanzey, New Hampshire, where, *inter alia*, he met Ralph Rines, the Chief of Police. Rines made inquiry of defendant as to whether he had a police record, and, upon receiving a negative answer, persuaded defendant to become a member of the Swanzey police force. Rines neither made nor caused to be made an independent record check of defendant's possible criminal record. Kozerski entered service as a Swanzey police officer in August of 1976, and on the 28th day of that month, he purchased from Bowers Remodeling Co., Inc., of Troy, New Hampshire, a federally-licensed firearms dealer, a certain caliber 38 Colt revolver. Subsequently, at a date unclear, defendant won in the course of a law enforcement officers' raffle a 38 caliber Smith & Wesson revolver.

On or about August 1, 1980, the Cheshire County Sheriff's Department received a complaint to the effect that defendant had been involved in actions which if proven would constitute a felony under New Hampshire laws.[3] In the course thereof a

1. Shortly prior to the time scheduled for commencement of such hearing the Government filed a motion to quash or otherwise modify defendant's varied subpoenas *duces tecum* which had been issued to certain proposed witnesses. Pursuant to applicable provisions of Rule 17(c), Fed.R.Cr.P., the Court conducted an *in camera* investigation of the documents in question and then issued its order quashing the subpoena in whole as to the file of the witness Kendrick K. Sawyer and modifying the subpoena as to the witness Kenneth L. Lysitt, noting defendant's objections to its rulings in this regard. In arriving at its decision relative to these subpoenas, the Court generally followed the guidelines outlined in *United States v. Nixon*, 418 U.S. 683, 698–700, 94 S.Ct. 3090, 3102–

03, 41 L.Ed.2d 1039 (1974). The Court further instructed the Government to maintain the files of the respective witnesses together in a safe place without removing therefrom any items in the event of further appellate challenge to its rulings.

2. Defendant's argument that such convictions were constitutionally invalid will be addressed by the Court in a subsequent portion of this Opinion.

3. At the commencement of hearing on the motions, defendant moved to the Court to strike any allegations or to bar any evidence surrounding the nature of this complaint on the ground that it was irrelevant. The Court de-

record check run with the assistance of the New Hampshire State Police revealed defendant's previous felony record in Massachusetts. Accordingly, on August 6, 1980, Sheriff Lysitt telephoned Chief Rines at the latter's place of employment and requested that he contact defendant and that both of them attend a meeting that evening in the Sheriff's office. When defendant arrived at the Sheriff's office at approximately 7:30 p. m. on August 6, 1980, Lysitt made inquiry as to his identity, and then read to him his *Miranda* warnings. Defendant acknowledged his understanding of these rights, claiming he was familiar with them from his duties as a police officer. Defendant executed a "Consent To Search", and was advised by the Sheriff that he was to be arrested for violation of the state law (N.H. RSA 159:3) prohibiting the possession of a firearm by a convicted felon. Chief Rines advised defendant that he was to be suspended from police duty until further notice, and Sheriff Lysitt advised him to remove the blue flashing lights and police radio from his vehicle. Lysitt also advised defendant that his firearms were to be confiscated and that $5,000 cash bail would be required for his court appearance.

Upon announcement of the amount of cash bail, defendant for the first time requested the opportunity to contact counsel, and then telephoned his attorney. The attorney shortly arrived, conferred privately with defendant for ten to fifteen minutes, and then conferred with Sheriff Lysitt and persuaded the latter to reduce the bail requirement to $5,000 personal recognizance.

Although advised of his client's execution of the Consent To Search, neither the attorney nor defendant gave any indication nor made any request of those present to withdraw such. The attorney having left, Lysitt, his deputy, and defendant proceeded to the latter's residence where defendant

opened the door and admitted the two sheriffs to what appeared to be the living room. Defendant then went to another part of the residence and returned with the two firearms hereinabove described and gave them to the sheriffs.

Within two weeks of the August 1980 incidents above described, the Cheshire County Sheriff's Department made contact with the Alcohol, Tobacco & Firearms (ATF) Division of the federal government, which conducted a subsequent investigation.[4] The state offenses with which defendant was charged resulted in dismissal by the Keene District Court in September 1980.

*1. The Motion to Suppress*

Defendant's initial argument is that his Massachusetts convictions were constitutionally invalid, primarily because he received ineffective assistance of counsel. This argument has previously been rejected following hearing (on January 23, 1970, and November 23, 1971, before the Massachusetts Superior Court, and appeal to the Massachusetts Appeals Court, *Commonwealth v. Kozerski*, 1 Mass.App. 106, 294 N.E.2d 460 [1973], and the Massachusetts Supreme Judicial Court, *Commonwealth v. Kozerski*, 364 Mass. 833, 305 N.E.2d 830 [1974]). Under such circumstances, the defendant's current reliance on the selected portions of the trial record and appellate counsel's characterization of trial counsel as set forth in the brief filed in his behalf with the Supreme Judicial Court of Massachusetts (Defendant's Exhibit H) is misplaced.

More importantly, this constitutional avenue which defendant seeks to traverse is barricaded to him. In *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the defendant was charged with the knowing receipt and pos-

---

nied this motion, as defendant's claims of prosecutorial delay (hereinafter discussed) required the admission of evidence with reference to this complaint, but did rule, and herewith orders, that all exhibits and other evidence bearing on the nature of said complaint be herewith sealed until further order of the Court.

4. The agent originally assigned to such investigation was taken ill, and the matter was reassigned to Agent Sawyer between March and April of 1981, with presentation before the grand jury on April 15th and return of the indictment herein on May 20.

session of a firearm in violation of 18 U.S.C. App. § 1202(a)(1).[5] Defendant urged that he had been without counsel when he entered his plea of guilty to the predicate conviction in state court, and this claim was rejected, the Supreme Court holding flatly

> that § 1202(a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds.

*Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980).

■ Additionally, the weight of, and what the Court considers to be the better-reasoned, authority is to the effect that 18 U.S.C. § 922(a)(6)[6] is violated by a denial of conviction of a felony, even though the conviction is later claimed or shown to have been unconstitutional. *United States v. Johnson*, 612 F.2d 305, 306 (7th Cir. 1980); *United States v. Graves*, 554 F.2d 65, 70–72, 75–76, 79–80 (3d Cir. 1977) (*en banc*); *United States v. Allen*, 556 F.2d 720 (4th Cir. 1977); *United States v. Ransom*, 545 F.2d 481 (5th Cir.), *cert. denied*, 434 U.S. 908, 98 S.Ct. 310, 54 L.Ed.2d 196 (1977); *Cassity v. United States*, 521 F.2d 1320 (6th Cir. 1975); *United States v. Edwards*, 568 F.2d 68 (8th Cir. 1977).

■ Defendant's second contention is that his arrest on August 6, 1980, was illegal, and that accordingly all evidence procured as a result thereof, including the firearms, the form he executed in the course of purchase of one of such firearms, and all statements given to any law enforcement officers and identification obtained in the course of the initial investigation must be suppressed. This contention is similarly without legal merit. Here, as the Court finds and rules, the Sheriffs had discovered in the course of their investigation of the initial complaint that defendant was possessed of a Massachusetts felony record and, having been given his proper warnings, defendant discussed, although denying its validity, the fact of the conviction, and did admit that he had served time in a Massachusetts prison. More importantly, the defendant was possessed of considerable knowledge of the criminal process (*see* Defendant's Exhibit I).[7]

The original state criminal complaint filed against defendant concerned an incident on July 4, 1980, when he was observed to be wearing a firearm while engaged in the course of a criminal investigation with a State Police officer and with the complainant, Deputy Sheriff Simmons. Thus, on the evening of August 6, 1980, the Cheshire County Sheriff's Department before commencing any interrogation of defendant was aware that he had a felony conviction record and that he had been wearing a firearm in public despite such record. Plaintiff seeks to urge that, taken out of context, certain language in the recent New Hampshire Supreme Court decision of *Kozerski v. Steere* (No. 80–454, decided June 10, 1981), demonstrates that his arrest on August 6, 1980, was illegal, and therefore any evidence procured thereafter must be suppressed. At the outset, we point out that *Kozerski v. Steere* was a civil action wherein defendant, subsequent to dismissal of the State's criminal charges, sought renewal of his license to carry a firearm pursuant to

---

**5.** Counts II and III of the instant indictment similarly allege violations by this defendant of 18 U.S.C. App. § 1202(a)(1).

**6.** Count I of the instant indictment is based in material part on an allegation that defendant violated 18 U.S.C. § 922(a)(6).

**7.** Defendant originally offered Exhibit I, representing it to be a clipping (undated) from the Boston Globe, as evidence of public knowledge of his previous criminal record. The Government objected to the admission of the exhibit on the ground of relevancy, as there was no evidence that the article had been brought to the attention of the Swanzey police authorities before defendant was retained as a police officer. At the time of offer, the Court therefore ruled that the exhibit should be marked for identification, stating it would render final ruling on admissibility in the course of Opinion. The Court herewith strikes the identification, finding that the article was obviously published before defendant was retained as a Swanzey police officer, and while not relevant to the knowledge of the Swanzey police officials as to his criminal record, it is relevant to the defendant's knowledge of criminal law and procedure.

the State statute, RSA 159. Fairly read, the language upon which defendant relies (contained on page 3 of the slip opinion, and hereinafter emphasized) does not serve the purpose which he urges. As relevant, the language is as follows:

We reject the plaintiff's argument that his prior felony conviction cannot be considered by the selectmen or the district court because it occurred outside of this State. The fact that the conviction was in another state does not prevent its use for otherwise proper purposes.

We also reject the plaintiff's attempt to invoke the exclusionary rule. *The plaintiff was arrested and charged with being a convicted felon in possession of a firearm in violation of RSA 159:3 even though he was exempt as a police officer under RSA 159:5.* The charges were dismissed in September 1980 by the district court. The plaintiff alleges that the information regarding his felony conviction came to the selectmen after his arrest under RSA 159:3. We fail to see how this brings into play the exclusionary rule, however, even assuming it applies to an administrative decision. The sheriff's department, obviously, obtained the information in question prior to the allegedly illegal arrest, not as the result of it. The receipt of the information by the selectmen was not the consequence of any illegal conduct on the part of the police, and the exclusionary rule is therefore not applicable to the case before us.

■ Moreover, even were defendant's arrest by the Cheshire County Sheriffs found to have been illegal, that would not end the Court's inquiry. It is well established that

The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.

*Michigan v. DeFillippo,* 443 U.S. 31 at 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979).

■■ Similarly, under the law of New Hampshire, the evidence required to constitute probable cause to arrest is more than that required to constitute reasonable suspicion, but less than that required to convict. *State v. White,* 119 N.H. 567, 572, 406 A.2d 291, 294 (1979); *State v. Hutton,* 108 N.H. 279, 287, 235 A.2d 117, 122 (1967). *See also* N.H. RSA 594. If "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed" by the suspect, then probable cause to arrest exists. *State v. White, supra,* 119 N.H. at 572, 406 A.2d at 294 (and authorities therein cited). Here, as above indicated, the Sheriffs had more than sufficient knowledge of facts and circumstances based on reasonably trustworthy information to warrant them as persons of reasonable caution in the belief that an offense (possession of firearm by a convicted felon) had been committed. Probable cause for the arrest of defendant existing, he may not complain that the fruits thereof must be suppressed.

■ Additionally, defendant, despite his demonstrated knowledge of the criminal process, herewith executed a Consent To Search, and although granted the opportunity to consult with counsel before any attempt at such search was made, neither he nor his counsel sought, despite their knowledge thereof, to withdraw such consent. The existence of consent and the voluntariness thereof are questions of fact to be determined from all the circumstances surrounding the search. *Schneckloth v. Busta-monte,* 412 U.S. 218, 246–47, 93 S.Ct. 2041, 2057–58, 36 L.Ed.2d 854 (1973); *United States v. Miller,* 589 F.2d 1117, 1130 (1st Cir. 1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979). The Court herewith finds and rules that defendant's consent to search herein was freely and voluntarily given, and it accordingly follows that his motion to suppress must be denied.[8]

---

8. Having decided, as we do, that the items which defendant seeks suppressed were obtained by means which would purge them from any primary taint, *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), we need not reach the issue of "inevita-

## 2. The Motion to Dismiss

### A. The Grand Jury Testimony

 Inasmuch as we have ruled that defendant was not the victim of an unconstitutional search and seizure, this aspect of his argument boils down to a contention that the indictment herein returned was based on hearsay (to wit, the testimony of an ATF agent) before the grand jury. While this agent appeared and was examined by defendant in the course of the motion hearing, the totality of circumstances make clear that his testimony before the grand jury was of sufficient validity to warrant the finding of probable cause to charge defendant with the offenses outlined in the indictment. The law is clear that an indictment based exclusively on hearsay evidence is not constitutionally invalid. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Brown*, 574 F.2d 1274 (5th Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978). The reasoning behind the foregoing rules is clear. The grand jury process is not an adversary proceeding, its function being merely to determine if there is probable cause which warrants the defendant's being bound over for trial, and the defendant is to be considered protected from such presentation when he is accorded full constitutional rights at trial on the merits. *United States v. Brown, supra*, 574 F.2d at 1275–76. Accordingly, there is no merit to the claim that the indictment is somehow defective because based on hearsay testimony.

### B. The Claim of Pardon

 New Hampshire Revised Statutes Annotated, Chapter 607–A (Uniform Act on Status of Convicted Persons) provides in pertinent part (RSA 607–A:5) that persons sentenced on conviction of felonies in New Hampshire's state courts upon completion of service of sentence or after service under probation or parole are entitled to have included in any order, certificate, or other instrument of discharge statements

> that the defendant's rights to vote and to hold any future public office, of which he was deprived by this chapter are thereby restored and that he suffers no other disability by virtue of his conviction and sentence except as otherwise provided by this chapter. A copy of the order or other instrument of discharge shall be filed with the clerk of the court of conviction.

N.H. RSA 607–A:5 I.

Where, as here, the sentence is in another state or in a federal court and the convicted person has similarly been discharged by the appropriate authority

> the governor of this state, upon application and proof of the discharge in such form as the governor may require, shall issue a certificate stating that such rights have been restored to him under the laws of this state.

N.H. RSA 607–A:5 II. Totally apart from the fact that defendant has failed to furnish the Court with any evidence that a certificate of discharge or other order was ever furnished him in accordance with the provisions of the foregoing statute,[9] the statute would not be applicable to his offenses. For example, in his argument (p. 8, Defendant's Memo in Support of Motion) defendant cites the Wisconsin statute, § 57.078, as being similar to New Hampshire relative to the restoration of rights automatically upon completion of prison sentence, probation, or parole. However, interpretation of that statute has held in the context of offenses similar to those here at issue that the specific Wisconsin statute cited granting restoration of civil rights did

---

ble discovery". *See United States v. Melvin*, 596 F.2d 492, 500 (1st Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979). Parenthetically, however, we note that once ATF was advised of the observation of defendant's publicly being in possession of a firearm and his felony record, its own investigation would probably have led to production of the

same evidence of which defendant here complains.

**9.** For the possible effect of such pardon, *see United States v. One Lot of Eighteen Firearms*, 325 F.Supp. 1326 (D.N.H.1971) (full gubernatorial pardon sufficient to prevent forfeiture of firearms).

not remove the defendant's felony convictions for purposes of the federal firearms statute. *United States v. Ziegenhagen,* 420 F.Supp. 72 (E.D.Wis.1976). *See also United States v. Bergeman,* 592 F.2d 533 (9th Cir. 1979); *United States v. Mostad,* 485 F.2d 199 (8th Cir. 1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974). The Court finds that (1) there is no evidence that defendant is within the ambit of the provisions of RSA 607–A and (2) even if defendant were within the terms of said statute, it would not serve to bar his prosecution on the offenses outlined in the instant indictment.[10]

### C. The Second Amendment

▉▉▉▉▉ Defendant analogizes himself as a rural police officer to the militia described in the Second Amendment,[11] emphasizing that he was required to purchase and have available his own firearm. It is well established that the Second Amendment is not a grant of a right but a limitation upon the power of Congress and the national government, *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *State v. Sanne,* 116 N.H. 583, 364 A.2d 630 (1976), and it is further held that the right guaranteed by the Second Amendment is a collective right to bear arms rather than an individual right, and has application only to the right of the state to maintain a militia and not to the individual's right to bear arms. *United States v. Warin,* 530 F.2d 103 (6th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976). *See also* Annot. 37 A.L.R.Fed. 696. The Court finds and rules that the defendant's argument that somehow the Second Amendment bars the instant prosecution is totally without legal merit.

### D. The Application of 18 U.S.C. § 925(a)(1)

▉▉▉▉ In the course of oral argument, defendant brought the Court's attention to the recent decision of *Hyland v. Fukuda,* 580 F.2d 977 (9th Cir. 1978), urging that the decision in that case supported his claim that he was exempt from prosecution pursuant to the provisions of 18 U.S.C. § 925(a)(1). The latter statute provides

The provisions of this chapter shall not apply with respect to the transportation, shipment, receipt, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

It follows, defendant contends, that inasmuch as he was employed by Swanzey, a political subdivision of the State of New Hampshire, he is exempt herein from prosecution. However, a reading of the *Hyland* case does not support his position. Therein Mr. Hyland brought a civil rights action (42 U.S.C. § 1983) on facts which indicate that he had applied for the position of Adult Corrections Officer in the Hawaii prison system, *stating on his application that he had been previously convicted of armed robbery,* for which conviction he served three years. His application was accepted, and he was allowed to take the civil service examination for the ACO position, but, concerned as to his right to be so employed and to carry a firearm, the State suspended his eligibility for employment pending the opinion of its Attorney General. When such opinion was issued, it indicated that one in the position of Mr. Hyland required a governor's pardon with respect to his conviction before he could be considered for employment in the position of ACO. Accordingly, the State suspended Hyland's further eligibility for employment until he presented evidence that he had been par-

---

**10.** It should be noted that a portion of Government Exhibit 1 is a certified statement (of July 9, 1981) from counsel to the Advisory Board of Pardons of the Commonwealth of Massachusetts advising that his search of the files of such agency showed no record of a petition for pardon filed by defendant in Massachusetts.

**11.** The Second Amendment provides

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

doned by the Governor of California (the state of predicate conviction). The district court granted relief, but was reversed on appeal. The appellate court did uphold the district court relative to alleged violation of 18 U.S.C. § 922(h)[12] on the ground that

> it is undisputed that any firearm Hyland might be permitted to carry in the position he seeks would be *owned by, and used exclusively for,* the state.

580 F.2d at 979 (emphasis added).[13]

The Court of Appeals, however, went on to hold that 18 U.S.C.App. § 1202(a) required that absent the specific pardon provided by § 1203 (pardon by President, Governor, with express authorization to carry firearm), the district court was wrong in creating a judicial exception for an Adult Corrections Officer. The Court also ruled (which disposes of defendant's suggestion that exemption under the New Hampshire statute here somehow applies) that there was no problem with preemption of the state statute by the federal firearms laws. The reason for this is that "no conflict" exists between such statutes

> [a]lthough the expunction statute could determine the status of the conviction for purposes of state law, it could not 'rewrite history' for the purposes of 'the administration of the federal criminal law or the interpretation of federal criminal statutes'.

*Hyland v. Fukuda, supra,* 580 F.2d 977 at 980–81 (citing *United States v. Potts,* 528 F.2d 883, 887 (9th Cir. 1975)) (Sneed, J., concurring in *en banc* result).

From the foregoing, it follows that neither 18 U.S.C. § 925(a)(1) nor any purported application of state statutes here exempted defendant from the application of the federal firearms laws the violation of which forms the basis of the instant indictment.

### E. The Applicability of 18 U.S.C. § 922(a)(6)

■ The Gun Control Act of 1968 (P.L. 90–618) amended Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 (P.L. 90–351), which repealed the Federal Firearms Act of 1938. It is codified in 18 U.S.C. § 921, *et seq.*

Count I of the indictment herein alleges that in the course of the purchase of his firearm from Bowers Remodeling Company, Inc., on August 28, 1976, the defendant "knowingly did make a false and fictitious written statement" to the firearms dealer in that he indicated on the Form 4473, Firearms Transaction Record, that he had never been convicted of a felony. Revised in 1973, and as here pertinent, the Form 4473 (Defendant's Exhibit B) executed by defendant on August 28, 1976, contained the following printed question, to which defendant gave a negative answer:

> 8(b). Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year.)

18 U.S.C. § 922(a)(6) provides in pertinent part that it is unlawful

> for any person in connection with the acquisition ... of any firearm ... from a ... licensed ... dealer ... knowingly to make any false or fictitious oral or written statement ... intended or likely to deceive such ... dealer ... with respect to any fact material to the lawfulness of the sale ... of such firearm ... under the provisions of this chapter.

18 U.S.C. § 922(d)(1), which must be read in conjunction with 18 U.S.C. § 922(a)(6), makes it unlawful for any licensed dealer to sell firearms or ammunition to any person

---

**12.** 18 U.S.C. § 922(h)(1) barred receipt of any firearm or ammunition shipped or transported in interstate or foreign commerce by a convicted felon.

**13.** As we have previously indicated, the evidence here is that Kozerski purchased one firearm with his own funds and won the other in a

law enforcement officers' raffle. Additionally, the Chief of the Swanzey Police testified that as his officers owned their own weapons, they could use them for private purposes, such as target practice. This marked distinction from the factual situation in *Hyland v. Fukuda* is sufficient to make that decision inapplicable.

knowing or having reasonable cause to believe that such person

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . .

It is from the above-quoted provisions of 18 U.S.C. § 922(d)(1) that question 8(b) of Form 4473 (similarly above quoted) is derived. *Huddleston v. United States*, 415 U.S. 814, 816, 94 S.Ct. 1262, 1264–65, 39 L.Ed.2d 782 (1974). Suggesting that the term "any court" as contained in the statute and in question 8(b) must of necessity be read as "any federal court" or "any court of the United States", the defendant urges that strict statutory construction bars his prosecution under 18 U.S.C. § 922(a)(6). Pointing to the provisions of 18 U.S.C.App. § 1202(a)(1),[14] which require a predicate felony conviction "by a court of the United States or of a State or any political subdivision thereof" and the absence of any such language in § 922(d)(1), defendant suggests that the lack of such specificity in § 922(d)(1) makes that statute ambiguous and that interpretation favorable to him bars prosecution because he was not convicted in a federal court.

Such argument overlooks the extensive definition of "crime punishable by imprisonment for a term exceeding one year" set forth in 18 U.S.C. § 921(a)(20), which specifically excludes from its terms certain Federal and State offenses, including "any State offense [other than one involving a firearm or explosive] classified by the laws of the State as a misdemeanor".

Finding as it does that the obvious intent of the Legislature in the Gun Control Act, 18 U.S.C. § 921, *et seq.*, is clear, the Court rules that the statute is "not to be construed so strictly as to defeat" this obvious intent, *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976), and denies dismissal on this ground.[15]

### F. The Constitutionality of 18 U.S.C. App. § 1201

■■■ Defendant contends that 18 U.S.C. App. § 1201, *et seq.*, is unconstitutional. As we have previously noted (n.5; n.14, *supra*), Counts II and III of the instant indictment charge defendant with violations of 18 U.S. C.App. § 1202(a)(1), which provides

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

The aforegoing statutory language

is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury. The obvious breadth of the language may well reflect the expansive legislative approach revealed by Congress's express findings and declarations, in 18 U.S.C.App. § 1201, concerning the problem of firearm abuse by felons and certain specifically described persons.

*Lewis v. United States*, 445 U.S. 55, 60–61, 100 S.Ct. 915, 918–19, 63 L.Ed.2d 198 (1980).

Contrary to defendant's assertions, there is no denial of equal protection or due process or indeed constitutional infirmity of any kind to be found in 18 U.S.C.App. § 1202(a)(1). *Lewis v. United States, supra.* There is no legal merit to the constitutional argument herein.

### G. The Claim of Lack of Scienter

■■■ The defendant's argument that 18 U.S.C. § 921, *et seq.*, does not apply to

---

**14.** As we have previously noted (p. 5, n.5, *supra*), alleged violations of 18 U.S.C.App. 1202(a)(1) are set forth in Counts II and III of the instant indictment.

**15.** Indeed there is respectable authority that without further definition the term "any court" would more probably refer to a state court rather than a federal court, which is a court of rather limited jurisdiction. *See Freudenberg v. Harvey*, 364 F.Supp. 1087, 1090 (E.D.Pa.1973).

crimes committed against the law of any state but rather only to predicate convictions in federal courts has already been disposed of, but defendant argues that inasmuch as he believed that the statute applied only in this regard, his alleged offense lacks the "knowledge" necessary for conviction pursuant to 18 U.S.C. § 922(a)(6). But it is clear that the scienter requirement of that statute can be met when there is a reckless disregard as to the truth of the statements to which one subscribes and when there is a conscious purpose to avoid learning the truth. *United States v. Wright,* 537 F.2d 1144, 1145 (1st Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292 (1976). In *United States v. Wright, supra,* the defendant had possession of a "Firearms Identification Card" issued by the Commonwealth of Massachusetts, and urged that having possessed such document for nearly three years, he was under a "misapprehension" constituting both "a mistake of fact and a mistake of law". *Id.,* 537 F.2d at 1146. The response of the Court was to the point, and bears on defendant's argument herein.

> Even if [the defendant] could be found to think that the state permit allowed him to purchase guns, he could not think that it permitted him to make 'false and fictitious statements' to the federal government, the offense with which he is charged. There could be no merit in the claim that he made a mistake of law. The most that could be said is that a belief on appellant's part that he had a right to purchase the gun bore on the recklessness vel non with which he signed the federal form. This issue of fact the court resolved against him. Any belief that he may have entertained as to the state permit is not of such great weight as to change our previously expressed opinion that the court's finding of recklessness was not plainly wrong.

*United States v. Wright, supra,* 537 F.2d at 1146.

And as to the allegations that defendant violated 18 U.S.C.App. § 1202(a)(1) (Counts II and III of the indictment), the only scienter required under that statute is that defendant knowingly possessed a firearm, as the prosecution need not prove that defendant knew it was unlawful to possess the firearm or that he knew the firearm had traveled in interstate commerce. *United States v. Goodie,* 524 F.2d 515, 517–18 (5th Cir. 1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976).

For the reasons hereinabove set forth, defendant is not entitled to dismissal on the ground that the prosecution has failed to allege scienter. On the basis of the evidence presented at the hearing on defendant's motion, a jury could (although it would not necessarily be required to) find beyond a reasonable doubt that the elements of scienter required to establish a violation of the respective statutes had been presented.

### H. Additional Constitutional Claims

At the inception of the instant litigation, the Court offered, but defendant rejected, the appointment of counsel within the district, insisting that unless a nonmember of the bar of the district whom he wished to have represent him were appointed, he desired to proceed with his own defense. His complaints of lack of due process and equal protection in being required to proceed to trial within the limitations of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.,* in this context are specious.[16]

As the Court has had occasion to point out previously to defendant, the Speedy Trial Act, in addition to setting up the strictures and requirements of research, planning, and statistic compilation, introduced the innovative concept of the right to a speedy trial by the public, independent of the defendant's rights or wishes. Annot. 46 A.L.R.Fed. 358 at 362. Rejecting appointed counsel, defendant was not entitled to

---

**16.** The claims are also largely mooted by the late appearance (requiring continuance of the scheduled trial) of the counsel whom defendant wished appointed when first before the Court.

This counsel is to appear *pro bono,* apparently because of a prior employment relation with defendant.

# 1094

"have it both ways" and to delay the trial (as initially requested) to a period well beyond the limitations imposed by the statute. No denial of equal protection or due process can be recognized under such circumstances.[17]

### I. The Adverse Publicity

 As is common practice and undoubtedly known to defendant, at least from his experience as a police officer, indictments, unless sealed, become matters of public record and are available to the media on a daily basis. Additionally, it is not unusual for prosecutors to issue brief statements outlining the substance of such indictment. Apparently there was publicity of this nature in the instant case, and (without presenting any of such to the Court) defendant argues that he could not be afforded a fair trial in this district.

In the course of the argument of the motions, the Court read to defendant the questions it ordinarily asks jurors on criminal *voir dire* and advised him that he could supplement same with any additional questions he wished, but that it appeared to the Court from prior experience that most jurors who are drawn from throughout the district (which comprises the entire state of New Hampshire) have little knowledge of specific defendants and that the claim of adverse publicity therefore had little merit.

### J. Prosecutorial Delay

 From what the Court has previously outlined as to the facts and legal rules

applicable to the instant proceeding, it is clear that there is no basis whatsoever for defendant's claim that some sort of prosecutorial delay caused him harm herein. Replacing a previously ill agent, the ATF Agent assigned to this investigation proceeded with alacrity (see n.4, p. 1086, *supra*), and the Court finds it somehow ironic that its attempts to proceed with speedy disposition of the action have been frustrated by defendant's vacillations over the issue of whether he desired to represent himself or proceed with counsel. The motion to dismiss grounded on any allegation of prosecutorial delay is herewith denied.

### 3. The Motion to Transfer Venue

 Relying upon the provisions of Rule 21, Federal Rules of Criminal Procedure,[18] defendant seeks transfer of trial to the District of Massachusetts on the dual grounds that he could not obtain a fair and impartial trial in this district because of the alleged prejudicial pretrial publicity and because his requested counsel, resident in Massachusetts, could then be appointed. As the Massachusetts counsel whom defendant sought unsuccessfully to have appointed to represent him in this district has now agreed to appear here to defend the accused, the latter argument is mooted. Additionally, it is well established that the request for transfer grounded upon inability to procure a fair trial because of adverse pretrial publicity need not, indeed, should not, be decided until *voir dire*. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). It follows that the

---

17. The hearings on defendant's motions concluded on the afternoon of July 14, 1981. At that point, the Court advised defendant orally that although he wished to review defendant's (that day filed) legal memorandum (of 34 pages), it appeared to the Court that probably the motions would be denied, and he should therefore be prepared to proceed to trial as then scheduled on the morning on Monday, July 20, 1981. The Court then commenced its review of defendant's authorities, interrupted by the requirement that it conduct (nearly simultaneously) on July 15, 16, and 17, two trials dealing with the issuance of injunctive relief. On the morning of Thursday, July 16, 1981, the Court's preliminary research satisfied it that, although it had not as yet been able to

complete the preparation of its formal Opinion, the motions should be denied. Defendant was advised immediately by telephone from the Office of the Clerk of this Court, and later that day for the first time advised that he had been able to procure counsel.

18. As here pertinent, Rule 21(a) Fed.R.Cr.P., provides for transfer to another district

if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.

motion for transfer must be and it is herewith denied.

### 4. Conclusion

The foregoing shall constitute the findings and rulings of this Court on the motions previously filed and heard by it. Defendant's requested findings and rulings Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 are herewith denied. New counsel having just appeared, rendering necessary a continuance, the trial herein is rescheduled to commence as the number one jury trial on Monday, August 17, 1981, at 9:30 a. m.

SO ORDERED.