Cazmis KOZERSKI

v.

Gregory SMITH, Attorney General, State of New Hampshire, Mervyn C. Frink, Bail Commissioner, Keene District Court.

Civ. No. 82–217–D.

United States District Court, D. New Hampshire.

Jan. 12, 1983.

Cazmis Kozerski, pro se.

Paul Barbadoro, Asst. Atty. Gen., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

*Pro se* petitioner has filed this petition for habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of the conviction and sentence of incarceration imposed upon him by the Keene (New Hampshire) District Court. Petitioner alleges that he was denied his right to a trial *de novo* of his traffic conviction in the Cheshire County Superior Court due to indigency. Petitioner further alleges that he has been unable to pay the fine imposed by the Keene District Court due to indigency and that he has been ordered to serve a term of incarceration, at the rate of $5.00 per day, in lieu of payment of the fine. His appeal to the New Hampshire Supreme Court having proved unsuccessful, sentence has been stayed by the Keene District Court pending resolution of this habeas corpus proceeding.

Petitioner was found guilty of speeding, a violation of N.H. RSA 265:60 (formerly codified at N.H. RSA 262–A:54), on October 14, 1981, in the Keene District Court. He was sentenced to pay a fine of $25.00 plus a penalty assessment of $2.50. Acting *pro se,* he immediately attempted to appeal his conviction to the Cheshire County Superior Court. *See* N.H. RSA 592–A:2; N.H. RSA 599:1. The Clerk of that Court informed petitioner by letter that his appeal had been filed, but that in order to perfect the appeal, a docket fee of $8.00 would have to be received by November 16, 1981. Petitioner responded by motion dated November 13, 1981, stating that he was unable to pay court costs due to poverty. Petitioner's motion stated that it was signed "under the pains and penalties of perjury". By letter dated November 19, 1981, the Clerk of the Cheshire County Superior Court returned the motion to petitioner along with his motion for appointment of counsel,[1] with direction to have his motion to proceed *in forma pauperis* notarized by a notary or justice. On December 4, 1981, the Cheshire County Superior Court remanded petitioner's case to the Keene District Court because petitioner had failed to resubmit his motion and no $8.00 fee had been received. Petitioner immediately filed a motion to vacate the Court's order of December 4, 1981, stating as grounds therefore that he was unable to comply with the order because he could not pay for the services of a notary public. The motion was denied.

Upon receipt of the Superior Court's remand, the Clerk of the District Court apparently sent petitioner a bill in the amount of $27.50, due December 22, 1981. The Clerk customarily affixes to such bills a notice that N.H. RSA 618:6 provides for imprisonment for failure or refusal to pay a fine.[2] *See* Affidavit of Lucille Gorges, Dep-

---

1. The motion for appointment of counsel was denied. *See Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

2. N.H. RSA 618:6 (Supp.1981) provides in pertinent part:

    Any person sentenced to pay a fine shall be ordered to be imprisoned until sentence is performed, or he is otherwise legally dis-

charged, in any house of correction or jail at the discretion of the court.

A person committed for nonpayment receives a credit of $5.00 per day for each day in custody. N.H. RSA 618:8; N.H. RSA 618:9. A person who is incarcerated for nonpayment who cannot pay the fine may petition the superior court for discharge. N.H. RSA 618:10. However, a prisoner may not be discharged unless either the petition is approved by the county attorney or the county attorney has been served with a copy of the petition at least ten days in advance

uty Clerk, Keene District Court. Petitioner denies receiving the notice. On January 11, 1982, the Keene District Court issued a bench warrant for petitioner's arrest for failure to pay the fine and penalty assessment. Petitioner was arrested on January 26, 1982, pled not guilty, and requested appointment of counsel. Charged with a violation of N.H. RSA 618:6,[3] petitioner was found eligible for appointed counsel,[4] and the matter was continued.

Treating the matter as a contempt proceeding,[5] petitioner's attorney appeared on February 17, 1982, ready to go forward with an evidentiary hearing and oral argument. The District Court declined to hear any evidence as to the reasons for the nonpayment, and it did not inquire into petitioner's ability to pay or whether alternative mechanisms for future payment would be appropriate.[6] Instead, it ordered petitioner to pay the total amount of the fine by March 5, 1982, or face imprisonment in the House of Correction. Petitioner, claiming indigency, timely excepted to the District Court's order. The District Court's record of proceedings, which consists of notations on the bench warrant as set forth below, reflects petitioner's exception.

> 1/26/82 — Plea
> Not Guilty —
> Cont to 2/2/82
> for atty.
> 　　J.S.D.
>
> 2/17/82 – Fine to be paid by 3/5/82 or Deft. is committed to House of Correction— Exception taken and allowed by both State and Deft's atty. 　　Note: no trial
> 　　J.S. Davis

Petitioner, again acting *pro se,* promptly filed a Motion for Stay of Sentence, Motion for Appointment of Counsel, and Motion for Leave to Proceed *In Forma Pauperis* with the State of New Hampshire Supreme Court. *See State v. Kozerski,* No. 82–087 (N.H.1982). The Supreme Court stayed execution of sentence to permit an answer by

---

of the hearing on the petition. N.H. RSA 618:11. The latter portions of the statutory scheme are not challenged here, and their constitutionality is not an issue before the Court. *Cf. Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) (public defender's approval cannot be required to obtain *coram nobis* transcript).

3. *See* Certified Copy of the Record of the Keene District Court, Notice of Appointment of Counsel.

4. Petitioner filled out a printed form entitled "State of New Hampshire—Financial Affidavit". The form was notarized. Petitioner reported that he had been unemployed since his arrest on other charges in January of 1981, that his sole source of income was welfare and food stamps, that the bank had foreclosed on his home, and that he owed money to various creditors. He reported no income in any bank accounts and thirty-five cents cash on hand. The sole asset listed was a 1973 Pontiac.

This Court's own records, of which it may properly take judicial notice, *see Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 157, n. 6, 89 S.Ct. 935, 942, n. 6, 22 L.Ed.2d 162 (1969); *ITT Rayonier, Inc. v. United States,* 651 F.2d 343, 345, n. 2 (5th Cir.1981); *NLRB v. Gass,* 377 F.2d 438 (1st Cir.1967), confirm the fact of petitioner's indigency. During the same period of time that the instant traffic offense was pending in the state courts, petitioner also appeared in federal court on criminal charges of possession of a firearm in violation of 18 U.S.C. App. § 1202(a)(1). *See United States v. Kozer-*

ski, 518 F.Supp. 1082 (D.N.H.1981). This Court found him indigent on June 4, 1981. He was convicted on August 18, 1981, and his conviction was affirmed on appeal. *United States v. Kozerski,* 698 F.2d 1213 No. 81–1748 (1st Cir. Nov. 1, 1982). Although our records disclose that petitioner was able to obtain employment as of July 1982 (five months after the completion of the instant state proceedings), he commenced serving his federal sentence on December 13, 1982, and this Court has since found Mr. Kozerski to be indigent in connection with two recently filed habeas corpus actions. *See Kozerski v. United States of America, et al.,* No. 82–695-D (D.N.H. Dec. 29, 1982), and *Kozerski v. United States Marshal, et al,* No. 82–696-D (D.N.H. Dec. 29, 1982).

5. The Bench Warrant commanding petitioner's arrest stated that he was to be brought before the Keene District Court "to answer for his contempt of said Court's order."

6. Petitioner's trial counsel avers that although petitioner claimed he was indigent the District Court denied him hearing and would not accept testimony or legal argument. Upon counsel's request, the District Court noted that no trial had taken place. *See* Affidavit of Lawrence G. Brann, Esq. The Assistant City Attorney who prosecuted the case also avers that no evidence was taken and that no formal inquiry was made into petitioner's present or past ability to pay the fine. Affidavit of David S. Park, Esq.

the Attorney General. After full briefing, the Supreme Court summarily denied all motions without opinion.

■ A person seeking habeas corpus relief from a state court conviction must first exhaust state court remedies. 28 U.S.C. § 2254(b); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "[T]he law of exhaustion requires only that [petitioner's] federal claims be first *presented* to the state courts so as to give them an opportunity to consider the constitutional issues; [he] need not demonstrate that those courts either addressed or decided them." *Williams v. Holbrook,* 691 F.2d 3, 8 (1st Cir.1982), *citing Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978), and *Kines v. Butterworth,* 669 F.2d 6, 12 (1st Cir.1981), *cert. denied,* — U.S. ——, 102 S.Ct. 2250, 72 L.Ed.2d 856 (1982) (emphasis in original).

■ The parties' briefs to the New Hampshire Supreme Court, provided to this Court by the State pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 fol. § 2254, R. 5, set forth the same factual allegations and legal arguments as are made here. The "substance" of petitioner's claim was fairly presented to the New Hampshire Supreme Court. *Picard v. Connor,* 404 U.S. 270, 277–78, 92 S.Ct. 509, 513–514, 30 L.Ed.2d 438 (1971). The State's highest court has been afforded "an initial opportunity to pass upon and correct alleged violations of [petitioner's] federal

rights", *Duckworth v. Serrano, supra* 454 U.S. at 3, 102 S.Ct. at 19, and the exhaustion requirement has thus been met.[7]

Upon review of the expanded record from which the foregoing factual summary has been drawn, *see* 28 fol. § 2254, R. 5, 7, the Court further concludes that an evidentiary hearing is not required. *See* 28 U.S.C. § 2254(d); *cf. Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Accordingly, the petition is properly before the Court for disposition on the merits.

■ The irony of this case is manifest. No sooner had petitioner's appeal to the Superior Court been dismissed for failure to supply certain proofs of indigency than he was arrested by order of the District Court, found indigent, and threatened with incarceration for nonpayment of a fine. This petitioner's plight may not evoke the immediate sympathy accorded the civil debtor faced with the spectre of a nineteenth-century debtor's prison;[8] nevertheless, where poverty automatically forms the basis of harsher criminal penalties or the loss of appellate remedies otherwise accorded other criminal defendants as a matter of right, the Equal Protection Clause of the United States Constitution prohibits such discrimination.

■ Petitioner had a right under State law to an automatic appeal for a trial *de novo* in Superior Court without a jury. N.H. RSA 592–A:2–b; *see State v. Komisarek,* 116 N.H. 427, 362 A.2d 190 (1976).

---

**7.** The fact that the New Hampshire Supreme Court heard the matter on a motion to stay does not alter the *exhaustion analysis.* In some circumstances even an "interlocutory" appeal will satisfy the exhaustion rule. *See generally Lydon v. Justices of the Boston Municipal Court,* 698 F.2d 1 No. 82–1376 (1st Cir. Dec. 30, 1982). Regardless of the manner in which this *pro se* defendant styled his motion, the New Hampshire Supreme Court clearly had jurisdiction over petitioner's case, if not under its appellate powers, *see* N.H. RSA 502 A:17–a; N.H. RSA 491:17, then under its general supervisory jurisdiction over the lower courts or its original and concurrent jurisdiction to issue writs of habeas corpus and other extraordinary writs, *see* N.H. RSA 490:4; *State*

*v. Givner,* 119 N.H. 778, 407 A.2d 824 (1979). In this case, petitioner unquestionably exhausted all "available" state court remedies, 28 U.S.C. § 2254(b), since the practical effect of the New Hampshire Supreme Court's order was to end the case, thus requiring petitioner to pay the fine or go to jail. Indeed, had it not been for the District Court's commendable evenhandedness in granting a further stay, this case might have evaded federal habeas corpus review entirely, given the short nature of the prison sentence imposed.

**8.** *See, e.g.,* Charles Dickens, *Little Dorrit* (1857).

Although the due process clause does not establish a right to appeal, *United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666 (1976), "once a state chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty". *Lane v. Brown, supra* 372 U.S. at 484, 83 S.Ct. at 772, *quoting Burns v. Ohio,* 360 U.S. 252, 257, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209 (1959). Accordingly, the United States Supreme Court has repeatedly held that the Equal Protection Clause prohibits conditioning the indigent defendant's right to appeal on the payment of costs and fees in advance. *Gardner v. California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) (transcript fee); *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963) (transcript fees); *Lane v. Brown, supra; Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) ($4.00 filing fee); *Burns v. Ohio, supra* ($20.00 filing fee); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (transcript fee). "Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial." *Griffin v. Illinois, supra* 351 U.S. at 17–18, 76 S.Ct. at 590.

Although Rule 92 of the Rules of the Superior Court of the State of New Hampshire mandates the dismissal of an appeal within twenty days if the filing fee is not paid,[9] New Hampshire law does provide for the waiver of court costs and fees "by reason of poverty". N.H. RSA 499:18–b (Supp. 1979). This is an unfortunate instance where a criminal defendant was denied his right of appeal for failure to pay such fees at a time when, as the record later revealed, all indications were that he was indigent,[10]

and he had timely presented his claim of poverty to the appropriate tribunal. Under the aforementioned authorities the writ must issue unless the petitioner's failure to have his motion notarized constituted a waiver of his right to a trial *de novo,* as defendants contend, or otherwise formed an independent and adequate state ground barring federal habeas corpus review of petitioner's Equal Protection claim. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783, *reh'g denied,* —— U.S. ——, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Lydon v. Justices of the Boston Municipal Court, supra.*

▪ Obviously, the courts of the State of New Hampshire have a legitimate interest in insuring to the extent possible that averments of indigency are truthfully made. The notarization requirement imposed here is not, however, a requirement that can be constitutionally imposed on an indigent defendant. Notaries in New Hampshire are themselves "entitled" to a fee for their services in administering oaths. N.H. RSA 455:11 (Supp.1979). Petitioner claimed he was without funds to pay a notary. The effect of the Superior Court's order was to require petitioner to spend money to prove he was indigent or to risk dismissal of his appeal for a trial *de novo.* Although the notary fee is only a dollar, we can conceive of no principled approach to constitutional adjudication which would permit a court to find a one-dollar fee valid under the Equal Protection Clause while finding a four-dollar fee unconstitutional,

---

9. The New Hampshire Supreme Court has held the filing fee requirement to be in violation of part I, articles 14 and 15, of the New Hampshire Constitution insofar as it applies to jury trials for criminal cases. *State v. Cushing,* 119 N.H. 147, 399 A.2d 297 (1979).

10. *See* n. 4, *supra.* Defendants point out that no formal hearing regarding indigency was

held. The state court's records regarding appointment of counsel supply the salient factual determination, a determination which is confirmed by this Court's records. Accordingly, there is no reason to depart from the statutory presumption of the correctness of state court findings. 28 U.S.C. § 2254(d); *Sumner v. Mata, supra.*

*see e.g., Smith v. Bennett, supra.* The logical alternative, if the State truly wishes to impose such a notarization requirement as a condition of perfecting an appeal,[11] is to arrange to provide notarial services free of charge, *cf. Bounds v. Smith,* 430 U.S. 817, 824, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977) (states must provide indigent prisoners with notarial services), or, alternatively, to arrange to have criminal defendants swear to the truthfulness of their claims of poverty at some later state of the proceedings. In this instance, however, the petitioner's failure to have his motion notarized is not an "adequate" state ground barring review.[12]

██ The District Court's sentence of incarceration runs afoul of the Equal Protection Clause on additional, independent grounds. In New Hampshire, speeding is a violation, not a crime. N.H. RSA 265:60; *State v. Komisarek,* 118 N.H. 524, 388 A.2d 1263 (1978). Incarceration is authorized for crimes, but not for violations. N.H. RSA 651:2–I, III. Petitioner's fine was converted to a jail term because he was unable to pay the fine due to indigency.

██ In *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), petitioner, an indigent, was convicted of several traffic offenses in violation of Texas law and fined $425.00. Texas, like New Hampshire, treated certain traffic offenses as violations, for which a fine but not incarceration could be imposed. However, because petitioner was too poor to pay the fine, he was sentenced, under a statute similar to N.H. RSA 618:6, to "work-off" his fine at the rate of $5.00 per day at the municipal prison farm. The

Court held that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full". *Id.* 401 U.S. at 398, 91 S.Ct. at 671, *quoting Morris v. Schoonfield,* 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970) (White, J., concurring). Just as a state may not extend the period of imprisonment beyond the statutory maximum solely by reason of indigency, *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), a state may not automatically convert a fine to a period of incarceration due to indigency alone.

> Since [the State] has legislated a 'fines only' policy for traffic offenses, that statutory ceiling cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine. Imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent and his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment.

*Tate v. Short, supra* 401 U.S. at 399, 91 S.Ct. at 671.

It is difficult to imagine a procedure more automatic than that applied here. The statute, N.H. RSA 618:6, provides for incarceration for nonpayment of a fine.

11. Oftentimes the purpose of requiring notarization (rather than simply requiring a defendant to submit a financial affidavit) is to preserve a record for a future perjury prosecution should a defendant's representations prove untruthful. New Hampshire law, however, permits a misdemeanor prosecution both for false swearing and for unsworn falsifications. *See* N.H. RSA 641:2, N.H. RSA 641:3. A false material statement made under oath or affirmation during the course of an official proceeding, or the affirmation of a statement previously made when the person making the statement believes the statement to be untrue, may form

the basis of a felony perjury prosecution. N.H. RSA 641:1.

12. Alternatively, if the state grounds were deemed adequate, petitioner has demonstrated both that he did not intentionally relinquish or abandon a known right or privilege, *Fay v. Noia, supra* 372 U.S. at 439, 83 S.Ct. at 849, and that he had "cause" for the noncompliance with the state procedural rule, *Wainwright v. Sykes, supra* 433 U.S. at 90–92, 97 S.Ct. at 2508–2509, the application of which prejudiced his right to appeal.

The deputy clerk of the District Court avers that it is her practice to affix a printed notice to court bills stating that state law provides for imprisonment of those who fail to pay a fine. Petitioner was arrested on a bench warrant and sentenced to the House of Correction without a hearing. Defendants argue that petitioner had ample time in which to pay the fine, and that incarceration was therefore permissible. Even if the imposition of a jail sentence "as an enforcement method when alternative means are unsuccessful despite defendant's reasonable efforts to satisfy the fines by other means" were permissible, a question as yet unanswered by the United States Supreme Court, *see Tate v. Short, supra* 401 U.S. at 400–01, 91 S.Ct. at 671–72, no alternatives [13] were considered in this case. Indeed, as trial counsels' affidavits state and the District Court record reflects, no hearing was afforded petitioner, presumably because the trial court found evidence and argument to be irrelevant in light of N.H. RSA 618:6. The passage of time did not cure petitioner's indigency, any more than it cured the constitutional dilemma inherent in the situation.

This Court is not unmindful of the administrative burdens that decisions such as this add to an already overburdened District and Superior Court system.

> While New Hampshire is [and always has been] blessed with fine judges, it is well known that their complement of personnel is understrength.... Until the elected representatives of the people come to grips with this problem, which is a direct result of the substantial increase in population and resulting litigation, all

that any courts, state or federal, can do is hope to cope with near impossible problems.

*Niemela v. Gatti,* No. 81–195–D, slip op. at 1–2 (D.N.H. Nov. 16, 1982). As the New Hampshire Supreme Court recognized in adopting strict procedures for processing criminal cases subject to speedy trial deadlines, an administrative overload can precipitate a constitutional crisis. The constitutionally protected rights of the criminal defendant cannot be made to pale or falter in the shadow of any particular political pledge.

Accordingly the writ shall issue in 30 days unless petitioner's appeal is reinstated to the docket of the Cheshire County Superior Court. A copy of such order of reinstatement shall be filed with this Court. Since petitioner will be in federal custody without the District of New Hampshire for the purpose of an evaluation for ninety days from the date of his transfer to the United States Medical Center in Springfield, Missouri,[14] the United States Marshal shall, as soon as is practicable, inform the Clerk of the Cheshire County Superior Court of the date of petitioner's return to the District of New Hampshire so that the Cheshire County Superior Court may schedule its trial dates.

SO ORDERED.

---

**13.** Various alternatives are noted in *Tate* and *Williams.* One New Hampshire commentator has summarized New Hampshire procedures thus:

> It is, therefore, apparent that at least with respect to violations, which are punishable only by fine, indigent persons may not be incarcerated to 'work off' the fine at the statutory rate unless they have refused to pay the fine. Despite the fact that the United States Supreme Court has stated that its holdings do 'not deal with a judgment of confinement ... in the familiar pattern of ... $30 or 30 days,' because of the breadth of

the court's language in *Tate,* New Hampshire judges have been loath to incarcerate indigents who are willing but unable to pay fines imposed for misdemeanors and felonies. When a fine for such an offense is imposed on an indigent, it is common for the court to specify that the fine be paid through the probation office, upon terms and conditions to be set by it.

McNamara, *Criminal Practice and Procedure.* 2 NHP § 868 (Equity 1980) (footnote omitted).

**14.** Petitioner is currently incarcerated at Danbury, Connecticut, awaiting transfer.